**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
REALSONGS, UNIVERSAL MUSIC CORP., WB
MUSIC CORP., AIN'T NOTHING BUT FUNKIN'
MUSIC, MUSIC OF WINDSWEPT, BLOTTER
MUSIC, ELVIS MAMBO MUSIC, CHRYSALIS
MUSIC GROUP, INC. d/b/a/ CHRYSALIS MUSIC
and UNIVERSAL-POLYGRAM INTERNATIONAL
PUBLISHING, INC.,

                      Plaintiffs,

                - against -

3A NORTH PARK AVENUE REST CORP. and
DOMINICK DESIMONE,

                     Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 09-574 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>PRELIMINARY STATEMENT</u>

Plaintiffs Realsongs, Universal Music Corp., WB Music Corp., Ain't Nothing but

Funkin' Music, Music of Windswept, Blotter Music, Elvis Mambo Music, Chrysalis Music

Group, Inc. d/b/a/ Chrysalis Music, and Universal-Polygram International Publishing, Inc.,

("Plaintiffs") commenced this action against Defendants 3A North Park Avenue Rest Corp. and

Dominick Desimone ("Defendants") for copyright infringement based on Defendants' public

performances of five (5) copyrighted musical compositions. *See* DE 1. After Defendants failed

to answer or otherwise move in response to the Complaint, Plaintiffs moved for default

judgment. *See* DE 9. District Judge Hurley entered a default judgment against the Defendants

and referred this matter to me for an inquest to determine and recommend what damages, if any,

are appropriate in this matter, including any attorneys' fees.

Plaintiffs seek an award of statutory damages, attorneys' fees, reasonable litigation costs and an injunction prohibiting Defendants from committing further infringing acts, pursuant to 17 U.S.C. §§ 502, 504, 505. According to Plaintiffs' unchallenged allegations, the amount of damages totals $21,907.75. *See* DE 9. In support of this request, Plaintiffs have submitted the Affidavit of Douglas Jones, manager of litigation services for the American Society of Composers, Authors and Publishers ("ASCAP") and the Declaration of attorney Jeffrey M. Movit, counsel for Plaintiffs. *See* DE 11, 12.

Based on the information submitted by Plaintiffs, and for the reasons set forth below, I respectfully recommend to Judge Hurley that damages be awarded against Defendants jointly and severally in the amount of $20,796.75, broken down as follows: $15,000 for statutory damages; $4,795 in attorneys' fees; and $1,001.75 in costs. Further, I recommend to Judge Hurley that the Defendants be permanently enjoined from performing or otherwise infringing any musical composition in ASCAP's repertory.

## II.   PERTINENT FACTS

Each of the named Plaintiffs are members of ASCAP, a membership association of more than 370,000 composers, songwriters, lyricists, and music publishers. *See* Compl. ¶ 12; Affidavit of Douglas Jones in Supp. of Pls.' Motion for the Entry of Default Judgment ("Jones Aff."), ¶ 3. Each member has granted ASCAP a non-exclusive license to authorize public performances of its copyrighted songs. Compl. ¶ 12; Jones Aff., ¶ 3. ASCAP licenses the right to perform publicly all of the copyrighted songs in its repertory to television stations, radio stations, restaurants, nightclubs, hotels, and other music users. Jones Aff., ¶ 4. In the course of its regular business activity, ASCAP maintains a file on every establishment that it has licensed or

attempted to license. *Id.,* ¶ 6.

In addition, ASCAP routinely contacts individuals and entities who own and operate establishments believed to be performing ASCAP members' copyrighted music without permission. Compl. ¶ 12; Jones Aff., ¶ 5. One such establishment contacted by ASCAP was Cabo Mexican Restaurant ("Cabo"), owned and operated by Defendants. Jones Aff., ¶¶ 7-8. Beginning in June 2003, ASCAP made twenty (20) separate communications through personal visits, letters and telephone calls to the Defendants advising them that any public performance of ASCAP members' works without a license was unlawful. *Id.,* ¶ 9. Despite these communications, Defendants did not obtain an ASCAP license. Compl. ¶ 12; Jones Aff., ¶ 10. Thus, ASCAP engaged an independent investigator who visited Cabo Mexican Restaurant on January 12-13, 2008. The investigator reported that five compositions whose copyrights belonged to the Plaintiffs were performed during that time period. These compositions were: (1) WHEN I SEE YOU SMILE; (2) MERCEDES BOY; (3) IN DA CLUB; (4) HOT HOT HOT; (5) WANNABE. Compl. ¶¶ 6-12; Jones Aff., ¶¶ 11-12. Plaintiffs subsequently sent a cease and desist letter to Defendants on September 9, 2009, but that notice was ignored. Jones Aff., ¶ 13.

## III.   APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007).

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiff has provided adequate support for the relief he seeks. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

## IV.  DISCUSSION

Plaintiffs have alleged that they are the owners of the copyrighted songs at issue in this litigation and, as members of ASCAP, have granted ASCAP a non-exclusive license to authorize public performances of these songs. Compl. ¶ 12; Jones Aff., ¶ 3. Moreover, Plaintiffs' submissions establish that Defendants never obtained an ASCAP license to perform Plaintiffs' songs at Cabo Mexican Restaurant. Compl. ¶ 12; Jones Aff., ¶¶ 7-14 and Exs. A, C, D. Specifically, Plaintiffs' investigator visited the restaurant and made contemporaneous notes of the songs he heard performed on the evening of January 12 and early morning of January 13, 2008. Jones Aff., ¶ 11. The investigator's notes are reflected in an Investigation Report which

was submitted with Plaintiffs' application for the award of damages. *Id.,* ¶ 11 and Ex. C.

Further, Defendants should be held jointly and severally liable. Plaintiffs allege that Defendant 3A North Park Avenue Restaurant Corp. ("3A North") is and has been the owner and operator of Cabo. Compl. ¶ 4; Jones Aff., ¶ 8. Plaintiffs point out that the New York State Liquor Authority website lists 3A North as the owner of the premises on which Cabo Mexican Restaurant stands. Jones Aff., ¶ 8 and Ex. B. That same website also lists Dominick DeSimone as the principal of 3A North and holder of the liquor license for the premises. Jones Aff., Ex. B. Based on communications with representatives of Cabo, Plaintiffs assert that at all relevant times, 3A North operated Cabo and that both 3A North and Cabo have been jointly controlled and operated by Defendant Dominick DeSimone. Compl. ¶ 5; Jones Aff., ¶ 8.

"[A]ny individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for that infringement." *Shady Records, Inc. v. Source Enters., Inc.*, No. 03 Civ. 9944, 2005 WL 14920, at *23 (S.D.N.Y. Jan. 3, 2005); *BMG Music v. Pena*, 2007 WL 2089367, at *3. In the context of a default, I find Plaintiffs' allegations that DeSimone and 3A North "have been responsible for the control, management, operation and maintenance" of Cabo, along with the document submissions, to be sufficient to demonstrate Defendants' involvement and financial interest in Cabo. *BMG Music v. Pena*, 2007 WL 2089367, at *3. Since two or more copyright infringers may be held jointly and severally liable for statutory damages, *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.,* 807 F.2d 1110, 1116 (2d Cir. 1986), I am respectfully recommending to Judge Hurley that the Defendants be held jointly and severally liable here.

### A. Statutory Damages

Section 504(c) of the Copyright Act provides that

> [a] copyright owner may elect . . . to recover, instead of actual
> damages and profits, an award of statutory damages for all
> infringements involved in the action, with respect to any one work,
> for which any one infringer is liable individually, or for which any
> two or more infringers are liable jointly and severally, in a sum of not
> less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). Plaintiffs have elected to recover statutory as opposed to actual damages

against the Defendants. Although Plaintiffs have provided some information concerning the lost

license fees by ASCAP from Defendants, statutory damages are appropriate here because of the

difficulty in determining the extent of total actual damages suffered and the extent of Defendants'

infringement. *See, e.g., BMG Music,* 2007 WL 2089367, at *3; *Van Der Zee v. Greenidge,* No.

03-CV-8659, 2006 WL 44020, at *1 (S.D.N.Y. Jan. 6, 2006).

To assess statutory damages, a court may take into account the "'expenses saved and

profits reaped by the defendant in connection with the infringements, the revenues lost by the

plaintiffs as a result of the defendant's conduct, and the infringers' state of mind-whether willful,

knowing, or merely innocent.'" *N.A.S. Import Corp. v. Chenson Enters., Inc.,* 968 F.2d 250, 252

(2d Cir. 1992) (quoting *Boz Scaggs Music v. KND Corp.,* 491 F. Supp. 908, 914 (D. Conn.

1980)). However, the Second Circuit has made it clear that statutory damages are designed not

only to compensate injuries sustained but also to discourage wrongful conduct. *See Yurman

Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 113-14 (2d Cir. 2001). Thus, courts have awarded

statutory damages of more than double the amount of unpaid licensing fees, especially in

circumstances where the infringement was not innocent. *See Broadcast Music, Inc. v. R Bar of*

*Manhattan, Inc.,* 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (determining that to put copyright infringers on notice, "a statutory damage award should significantly exceed the amount of unpaid license fee" and imposing statutory damages five times the unpaid licensing fees).

Plaintiffs have determined that based on Defendants' copyright infringements, the Defendants have profited in the approximate amount of $5,947.88, which represents the license fees Defendants would have otherwise had to pay from June 1, 2003, through December 31, 2009, to use the licensed works of ASCAP members. *See* Jones Aff., ¶ 16. However, Plaintiffs request statutory damages in the amount of $3,000 per infringement, totaling $15,000 for the five infringements. *Id.* at 18. Although the amount sought by Plaintiffs is just under three times the amount of license fees they would have otherwise been paid, the Court finds that the $15,000 request for statutory damages is reasonable when dealing with the deliberate infringement at issue here and when compared to other statutory damages awarded by our sister courts under similar circumstances. *See, e.g., Broadcast Music, Inc. v. Northern Lights, Inc.,* No. 07-CV-476, 2009 WL 2319970, at *2 (N.D.N.Y. July 28, 2009) (awarding $40,000 in statutory damages where unpaid licensing fees were $24,890.61); *R Bar of Manhattan, Inc.,* 919 F. Supp. at 660 (awarding $12,000 in statutory damages where unpaid licensing fees were $2,245); *Barnaby Music Corp. v. Catoctin Broadcasting Corp.,* No. CIV-86-868, 1988 U.S. Dist. LEXIS 15394, at *14 (W.D.N.Y. 1988) (awarding statutory damages of $11,250 where unpaid licensing fees would have exceeded $4,800). I therefore respectfully recommend to Judge Hurley that statutory damages in the amount of $15,000 be awarded to Plaintiffs.

**B.     Costs and Attorneys' Fees**

Section 505 of the Copyright Act allows, at the court's discretion, the prevailing party to

recover costs and attorneys' fees.  *See* 17 U.S.C. § 505.  Further, a willful infringement supports

an attorneys' fees award.  *See Kepner-Tre-goe, Inc. v. Vroom,* 186 F.3d 283, 289 (2d Cir. 1999);

*Entral Group Int'l v. Sun Sports Bar Inc.*, No. 05-CV-4836, 2007 WL 2891419 (E.D.N.Y.

Sept. 28, 2007).  Given the willful infringement of the Defendants and their failure to participate

in this action, an award of attorneys' fees and costs is appropriate here.

To determine what are reasonable attorneys' fees, this Circuit has historically

implemented the lodestar method by examining "the number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434

(1983); *see also Crescent Publ'g Group, Inc., v. Playboy Enters., Inc.,* 246 F.3d 142, 150 (2d

Cir. 2001) (holding that in Copyright actions, "an objective measure such as the lodestar seems

the most effective method in enabling parties to retain competent counsel").   However, in *Arbor

Hill Concerned Citizens v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit

determined that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a

metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190.  Further,

the Second Circuit reasoned that "[w]hat the district courts in this circuit produce is in effect not

a lodestar as originally conceived but rather a 'presumptively reasonable fee.'" *Id.* at 189.

The presumptively reasonable fee standard is predicated on the same basic analysis "by

calculating the product of the hours reasonably expended and a reasonable hourly rate."[1] *Koon*

---

[1]     The difference between the two methods is the lodestar method "would set the
lodestar *and then* consider whether, in light of variables such as the difficulty of the case, it
should adjust the lodestar before settling on the reasonable fee it was ultimately inclined to

*Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.,* No. 04-CV-2293, 2009 WL

5185808, at *4 (E.D.N.Y. Dec. 23, 2009); *see also McDaniel v. County of Schenectady*, 595 F.3d

411, 417 n.2 (2d Cir. 2010) ("While the *Arbor Hill* panel indicated its preference for

abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a

derivative of the lodestar method.").

Regarding the reasonable hourly rate portion of the presumptively reasonable fee

standard, the Second Circuit has suggested that the district court consider "what a reasonable,

paying client would be willing pay" when setting a reasonable hourly rate.[2] *Arbor Hill,* 522 F.3d

at 184.  However, the Court notes this Circuit's adherence to the forum rule which states that

district courts should generally use the prevailing hourly rates in the district where it sits. *See*

*Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).  The Second Circuit has

since clarified that district courts "may use an out-of-district hourly rate – or some rate in

between the out-of-district rate sought and the rates charged by local attorneys – in calculating

the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid

---

award." *Arbor Hill,* 522 F.3d at 187.  However, the presumptively reasonable fee standard bears in mind *"all* of the case-specific variables . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190.

[2]    The Second Circuit lists as relevant factors in determining what a reasonable, paying client would be willing to pay as "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation. *Arbor Hill,* 522 F.3d at 184.

those higher rates." *Arbor Hill*, 522 F.3d at 191. The Second Circuit cautioned that "[w]e presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* Nevertheless, "[t]his presumption may be rebutted – albeit only in the unusual case – if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances." *Id.*

To overcome the presumption in favor of the forum rule, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009). In *Simmons*, the Second Circuit recently advised that

> [i]n determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. . . . The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. . . . Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons,* 575 F.3d at 175-76 (internal citation omitted).

Regarding the hours expended portion of the presumptively reasonable fee standard, a court must "examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Entral Group Int'l,* 2007 WL 2891419, *9. "In the Second Circuit, motions for attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *R Bar of Manhattan, Inc.,* 919 F. Supp. at 661 (citing *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d. Cir. 1994)). Moreover, any billed time which is unreasonable, excessive, redundant or unnecessary should be excluded in the calculation. *See Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999); *BMG Music,* 2007 WL 2089367, at *7.

Plaintiffs seek attorney fees and costs in the amount of $6,907.75, of which $5,906 represents strictly attorneys' fees. *See* Mem. of Law in Supp. of Pls' Mot. for Entry of Default Judgment ("Pls.' Mem."), at 12-14. In support of this request, Plaintiffs submitted the declaration of attorney Jeffrey Movit of the New York City firm Mitchell Silberberg & Knupp LLP, counsel for Plaintiffs, setting forth the work done and cost incurred by his firm regarding this matter. *See* Decl. of Jeffrey M. Movit in Supp. of Pls.' Mot. for the Entry of Default Judgment ("Movit Decl."). Annexed to the Movit Declaration are monthly time records that account for every entry requested by Plaintiffs. *See* Movit Decl., Ex. A. The individuals involved in the representation were: (1) Partner Howard H. Weller, who billed only two-tenths of an hour to this matter, with an hourly billing rate of $495; (2) six-year associate Jeffrey Movit, who billed 14.4 hours to this matter, with an hourly billing rate of $345 in 2008 and $400 in 2009; and (3) paralegal Nancy Tavarez, who billed three-tenths of an hour to this matter, with an hourly billing rate of $230 per hour. *Id.*, ¶¶ 6-8 and Exs. B, C.

11

## 1. The Hourly Rate of Plaintiffs' Counsel

To support their request for $5,906 in attorneys' fees based upon counsel's New York City billing rates, Plaintiffs rely on the proposition that "[a]lthough attorney rates are generally evaluated in comparison to those charged in the district in which the court sits, courts in the Eastern District of New York often use rates for New York City attorneys awarded in the Southern District of New York as a basis for comparison." *Entral Group Int'l,* 2007 WL 2891419, at *9-10; *BMG Music,* 2007 WL 2089367, at *7. However, this Court notes that the cases cited by Plaintiff in support of this proposition were decided prior to *Arbor Hill* and *Simmons,* which established a presumption in favor of applying rates from the district in which the case was filed. Thus, in order to apply out-of-district rates, even those of the Southern District, Plaintiff must overcome the presumption by experience-based, objective factors such as counsel's special expertise in litigating the particular type of case as well a particularized showing that the use of in-district counsel would produce a substantially inferior result, such as by establishing that no in-district counsel possessed such expertise. *See Simmons*, 575 F.3d at 175-76.

Plaintiffs arguably have made a particularized showing with regard to the objective factors needed to apply out-of-district rates. The firm representing Plaintiffs specializes in intellectual property litigation and has represented ASCAP and its members in a variety of intellectual property matters. *See* Pls.' Mem. at 13-14; Movit Decl., ¶¶ 3-4. Further, the attorneys assigned to this matter, namely, Jeffrey Movit and Howard Weller, specialize in intellectual property litigation with over six and 20 years of experience respectively. Pls.' Mem. at 14; Movit Decl., ¶¶ 6-7. However, lacking in Plaintiffs' papers is the necessary particularized

showing that the use of in-district counsel would produce an inferior result. In fact, Plaintiffs provide no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or alternatively, no in-district counsel possessed such expertise. Accordingly, this Court must apply Eastern District of New York rates to determine a reasonable hourly rate.

In 2007, one court in the Eastern District observed that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Medical Services PC,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007). Two years later, in *Melnick v. Press,* No 06-CV-6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (decided several weeks after *Simmons* and taking that case into account), the court held that rates in the Eastern District vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates. *Melnick,* 2009 WL 2824586, at *9. The Court notes that this district has previously approved higher hourly rates in intellectual property matters as they require specialized knowledge, even when such actions were considered in a default setting. *See Microsoft Corp. v. Computer Care Ctr., Inc.,* 06-CV-1429, 2008 WL 4179653, at *14-15 (E.D.N.Y. Sept. 10, 2008) (approving hourly rate of $500 for a partner and $385 for an intellectual property associate with several years of experience)*; Entral Group International, LLC,* 2007 WL 2891419, at *10 (finding the rates of $540 for partner as well as $360 and $340 per hour for associates reasonable).

However, the *Microsoft Corp*. and *Entral Group* cases involved New York City counsel where this Court approved the hourly rates based upon the forum rule as it existed prior to *Arbor*

13

*Hill* and *Simmons*. *See Microsoft Corp.*, 2008 WL 4179653, at *15 (holding that "the hourly rates charged by [counsel], while on the high side, fall within the range awarded in New York City for cases of this kind"); *Entral Group Int'l,* 2007 WL 2891419, at *10 (finding that the rates are "reasonable and within the range of rates charged for copyright infringement cases in New York City"). Thus, the rates that this district approved and found reasonable at the time in *Microsoft Corp.* and *Entral Group* were actually those rates which were reasonable under Southern District standards.

Subsequent to *Arbor Hill* and *Simmons*, this district has to date considered the reasonable hourly rate issue in an intellectual property setting where a default has occurred in a few cases that this Court has been able to find.[3] In *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.,* No. 04-CV-2293, 2009 WL 5185808 (E.D.N.Y. Dec. 23, 2009), Plaintiff's counsel, located in the Southern District, sought reimbursement for the following hourly rates: a partner with 44 years of intellectual property experience at $425-$450; an associate with six years of intellectual property experience at $300-$325; and paralegals at $85-$90. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 2009 WL 5185808, at *5. After concluding that Plaintiff did not address whether the court should depart from the forum rule, the court nevertheless found counsel's rates consistent with those previously awarded in this district. *Id.* However, the *Koon Chun* court, to support the hourly rates of Plaintiff's counsel, relied in part on *Microsoft Corp.*

---

[3]    Earlier this year, in *Lyons Partnership, L.P. v. D & L Amusement & Entertainment, Inc.*, 702 F. Supp. 2d 104 (E.D.N.Y. 2010), the court entered a default judgment against defendant costume suppliers whom it found to have infringed plaintiffs' copyright and trademark rights in popular children's television characters. The court found rates ranging from $425-440 hourly for partners to be reasonable, along with a rate of $260-270 for senior associates, $135-160 for junior associates, and $75 for a legal intern/paralegal. *Id.*, at *121. *Simmons* is not discussed in this case.

and *Entral Group.*

Within days of the Second Circuit's decision in *Simmons*, a magistrate judge in this district issued a Report and Recommendation in an action brought under the Copyright Act by various sound recording companies recommending that a default judgment be entered, that plaintiff be awarded statutory damages, costs and attorney's fees and that a permanent injunction be issued. The district judge adopted the Report and Recommendation and directed the clerk to enter judgment. *See Musical Productions, Inc. v. Roma's Record Corp.*, No. 05-CV-5903, 2009 WL 3052630, at *1 (E.D.N.Y. Sept. 23, 2009). Although *Simmons* is not discussed in that decision, the magistrate judge observed that the hourly rates charged by plaintiff's Manhattan counsel "appear to be somewhat higher than the rates charged in this district." *Id.*, at *10. He went on to state that a number of courts in the district have awarded attorney's fees "at lesser rates of $200 to $300 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and approximately $100 for paralegals" (citation omitted) while other courts "have concluded that these rates are outdated and have awarded fees at a higher rate" (citation omitted). *Id.* Finding that the plaintiff had not adequately supported the hourly rates requested (*i.e.*, $425/hour for partner, $250/hour for senior associate, $150/hour for junior associate), thereby warranting a reduction of the fees, the magistrate judge discussed the deduction of a reasonable percentage of the hours claimed as a practical means of trimming a fee application and recommended a 25% reduction in the fees to be awarded. *Id.*

In the same time frame, another court in this district dealt with a software company's action for infringement of its copyrighted materials and trademarks used to serve businesses in the hospitality industry. *See Tu v. TAD System Technology, Inc.*, No. 08-CV-3822, 2009 WL

2905780, at *1 (E.D.N.Y. Sept. 10, 2009).   In *Tu*, the court entered a default judgment, issued a permanent injunction, and awarded statutory damages, attorney's fees and costs.  *Id*., at *6-10. Applying *Simmons*, the court found that the fees requested ($475 hourly and $420 respectively for partners, $260 for associate in Chicago, and $525 hourly for partner, $395 for senior associate at local counsel's firm in the Southern District) were "significantly higher than those typically approved."  *Id*., at *10.  The court also noted that the plaintiffs had presented no evidence that attorneys within the Eastern District of New York would have produced a substantially different result from the one obtained by the Chicago firm retained by plaintiffs in the case.  *Id*.  Taking these factors into account, the court awarded hourly rates of $375 for partners, $250 for senior associates, and $150 for junior associates.  *Id*.

In essence, this Court is left with case law supporting higher rates in intellectual property cases with limited guidance as to what range of rates would be reasonable subsequent to *Arbor Hill* and *Simmons*.  In light of these developments, this Court is constrained to recommend rates at, or slightly above, the recent rates approved in this district.  Therefore, I recommend to Judge Hurley that the following rates are reasonable in light of *Arbor Hill*, *Simmons* and the recent cases in this district referenced above:  (1) Partner Weller's rate of $495 be reduced to $425; (2) senior associate Movit's rate of $400 be reduced to $325; and (3) paralegal Tavarez's rate of $230 be reduced to $100.

**2.      Time Expended by Plaintiffs' Counsel**

Attorney Movit was the primary attorney responsible for handling this matter.  In fact, Partner Weller billed only two-tenths of an hour total, which occurred in the first month of the firm's representation of Plaintiffs.   *See* Movit Decl., Ex. A.  The total hours incurred by

Plaintiffs' counsel was just under 15 hours for a matter that was initiated in October 2008. Although the issues raised in this case did not involve novel areas of the law, the attorneys were still required to confer with their clients regarding the claims, draft cease and desist letters as well as a complaint, and formally move for a default judgment, among other things. After a review of the invoices submitted by Plaintiffs' counsel, the Court does not identify any unreasonable, excessive or unnecessary time that should be excluded. Accordingly, I find that all 14.9 hours expended by Plaintiffs' counsel are properly included in calculating the attorneys' fee award.

### 3.    *Total Attorneys' Fees*

Based on the above analysis, I recommend to Judge Hurley that Plaintiff be awarded $4,795 in attorneys' fees broken down as follows: (1) associate Movit's rate of $325 multiplied by 14.4 hours expended ($4,680); (2) Partner Weller's rate of $425 multiplied by .2 hours expended ($85); and (3) paralegal Tavarez's rate of $100 multiplied by .3 hours expended ($30).

### 4.    *Costs*

Plaintiffs also seek $1,001.75 in costs incurred in this lawsuit. Other than minimal amounts for copying and printing ($45.50) as well as word processing ($81.25), the bulk of the costs incurred are in regard to filing and service of process fees. *See* Movit Decl., Ex. A. I find that these costs are recoverable and reasonable. *See Entral Group Int'l,* 2007 WL 2891419, *12 (finding $1,035.66 in costs reasonable); *Aston v. Sec'y of Health & Human Servs.* 808 F.2d 9, 12 (2d Cir. 1986) (determining that photocopying is a reimbursable cost). In light of this information, I recommend to Judge Hurley that Plaintiffs be awarded $1,001.75 in costs.

## C.     Injunctive Relief

Plaintiffs also seek to enjoin Defendants from performing any songs in the ASCAP repertory without prior authorization. *See* Pls.' Mem. at 14-15. Although not explicitly stated in Plaintiffs motion papers, the Court understands their request to be one for a permanent injunction. As an initial matter "[a] court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" *Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.,* No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting *King v. Nelco Indus., Inc.,* No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)); *BMG Music*, 2007 WL 2089367, at *5.

Further, Section 502(a) of the Copyright Act provides:

> Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent a restrained infringement of a copyright.

17 U.S.C. § 502(a). Thus, to obtain a permanent injunction, the moving party must establish that "1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits." *BMG Music,* 2007 WL 2089367, at *5. Moreover, permanent injunctions will only be given where "there is a substantial likelihood of future infringements." *Boisson v. Banian Ltd.* 280 F. Supp. 2d. 10, 15 (E.D.N.Y. 2003).

First, to make out a *prima facie* case of copyright infringement, a party must establish ownership of a valid copyright and that the defendant violated an exclusive right conferred by the ownership. *See Feist Publ'ns, Inc., v. Rural Tel. Serv. Co.,* 499 U.S. 340 (1991); *Laureyssens v. Idea Group, Inc.,* 964 F.2d 131, 139 (2d Cir. 1992). Here, Plaintiffs are the copyright owners to

the compositions at issue and have established, through an independent investigator, that Defendants used the copyrighted compositions without the proper permission or authority to do so on January 12-13, 2008. Thus, Plaintiffs have established actual success on the merits. Moreover, irreparable harm is presumed where a party has established a *prima facie* case of copyright infringement. *See Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch,* 312 F.3d 94, 96 (2d Cir. 2002); *U2 Home Entm't Inc. v. Bowery Music City, Inc.,* No 03 Civ. 8909, 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8 2003). Further, it is clear from Defendants' failure to respond to over twenty communications from ASCAP on behalf of Plaintiffs and their failure to participate in this action that Defendants have no intention of following the law and will likely continue to violate Plaintiffs' copyrights without an injunction. Accordingly, I am respectfully recommending to Judge Hurley that Plaintiffs' request for an injunction be granted, thereby preventing Defendants from performing the songs in the ASCAP catalog without prior authorization. *See BMG Music*, 2007 WL 2089367, at *5 ("The scope of injunction may include not only the Copyrighted Recordings [at issue] but all copyrighted sound recordings owned or controlled by plaintiffs.").

## V.  CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Hurley that damages be awarded against Defendants jointly and severally in the amount of$20,796.75, broken down as follows: $15,000 for statutory damages; $4,795 in attorneys' fees; and $1,001.75 in costs. Further, I recommend to Judge Hurley that the Defendants shall be permanently enjoined from performing, or otherwise infringing any musical composition in ASCAP's repertory.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
      September 22, 2010

                               /s/ A. Kathleen Tomlinson
                               A. KATHLEEN TOMLINSON
                               U.S. Magistrate Judge